Oakley, J.,
after stating the facts of the case.
The principal question arising on the bill of exceptions taken at the trial, is, whether the above state of facts suspended the policy, so that it did not cover the building at the time of the fire, by virtue of the clause contained in it, which provides, in case the building insured should at any time, during the continuance of the policy, be used for the purpose of carrying on any trade, business, or vocation denominated hazardous or extra-hazardous, as specified in the memorandum of special rates in the proposals annexed to the policy, “ or for the purpose of storing therein any of “ the articles, goods, or merchandise, in the same proposals deno- “ minated hazardous or extra-hazardous, unless specially pravid ed for in the policy, or subsequently agreed to by the defendants “ in writing; that then, so long as the same building should be so appropriated, applied, or used, the said policy should cease, “ and be of no force or effect.” In the proposals annexed to the policy, oil and spirituous liquors are denominated hazardous articles.
It is contended, on the part of the plaintiffs, 1st. That the building being used as a “ store,” and the business of keeping a grocery store not being denominated hazardous, and therefore not pro *235 hibited by the policy, the plaintiff had a right to carry on that • • business, and to keep all such articles as are usually kept in such stores.
2. That if not, the keeping of the liquors and the oil, under the circumstances, was not á storing, within the meaning of the contract.
Where the insurance is general on the building, or where a store in general terms is insured, the true construction of the policy undoubtedly is, that all kinds of business may be carried on, and all kinds of goods or merchandise kept in the building, except such as are expressly prohibited. Any other construction would render all the restrictions in the policy inoperative and void. Some efficacy must unquestionably be given to the clause which prohibits the storing of hazardous articles, rvithout the written consent of the defendants. If the right of storing such articles foEowed as appurtenant to the general business of a grocer, it would equally follow as appurtenant to that of a commission merchant. His business, as such, would not be prohibited by a policy like the present ; and yet it might consist entirely in storing the hazardous or extra-hazardous articles enumerated in the policy.
Thus it will be seen, that upon the construction contended for by the plaintiff, a case can scarcely be imagined in which the prohibition in the policy, against the storing of such articles, could be applied. The true meaning of the contract seems to me to be very clear and simple. The plaintiff is authorized to keep any store in the building insured, provided in doing so he does not use any part of it for the purpose of storing certain articles of merchandise, which are denominated hazardous or extra-hazardous in the policy itself.
The only question then is, whether the keeping of the casks of oil and spirituous liquors in the cellar of the building, in the manner in which they were kept, is a violation of the prohibition in the policy.
In the present case it appears, that the oil and liquors in question were purchased by the grocer, and deposited in his ceEar. The cask of oil was unbroken, but the casks of liquors were partly drawn out. These casks were deposited in the cellar for the pur *236 pose of replenishing his store from time to time, as occasion might require. They constituted then a part of his ordinary stock in trade as a retail grocer, and I am of opinion, that the keeping of them under the circumstances, and for the purposes of ordinary retail, and not in universal quantities, is not a storing of them, within the meaning of the clause in the policy under consideration.
It is difficult, perhaps, to affix any precise meaning to the word storing, as used in the policy. Its import is in a degree vague and uncertain. Without undertaking here to define it, it is sufficient to say, that it does not, in my judgment, reach a case like the present,

Judgment for the plaintiffs.

[E. Anthon, Att'y for plff. C. C. King, Att'y for defts.]
Jfote.—One of the principal points of defence relied upon by the underwriters, at the outset of this cause, rested on the ground, that the plaintiff had materially increased the risk, after effecting the insurance, by dividing off 20 feet of the rear of the lot upon which the building stood, at the distance of 75 feet from the house, and erecting thereon a carpenter's shop. This point was presented to the court at the trial, and insisted on as a substantial ground of defence; but the judge charged the jury, that if they considered the risk to be enhanced by the erection of the carpenter’s shop, they would find a verdict for the defendants. The jury found, however, that the risk was not thereby increased, and the defendants, therefore, did not make this a point of defence upon the argument at bar.
The defendants also offered to prove by pa.ro!, that it is the custom among underwriters, whenever they insure a grocery, to exact a higher premium than for an ordinary building. But upon the question being objected to, it was withdrawn ; the presiding judge intimated, however, that the inquiry was improper.
The counsel for the plaintiff in the course of the trial, upon the examination of the surveyor of the defendants, asked him, “ whether the plaintiff did not inform him, at the time the survey was made, that the store in the building was intended for a grocery ?” This question being objected to was overruled by the judge, and an exception taken to his opinion by the counsel for the plaintiff But this exception was not afterwards brought forward, or in any way agitated upon the argument before the whole court.
This cause Was subsequently carried into the Supreme Court by writ of error, where the judgment of this court was affirmed.