Whitehead, J.
On the trial of this cause at the Essex Circuit, the plaintiff gave in the evidence the policy of insurance, affidavits of the extent of the loss, certificate of magistrate &c. He also proved the time when the fire took place, and the extent of the loss as estimated by mechanics.
*481 The defendants on their part, proved by their agent, that he was called upon by the plaintiff, to make a survey of the house. That it was represented by the plaintiff to be a private dwelling house. That at the time the insurance was effected, it was not kept as a boarding house, and saw no bar in it. They also proved by a number of witnesses, that at the time of the fire and before, it was in the possession of a woman, a tenant of the plaintiff, who kept it as a hoarding house, had a regular bar where liquor was sold by retail to the boarders and others who called. That all kinds of spirituous liquors were kept in open view, in decanters, demijohns and kegs, and that it was a place of common resort for the neighborhood.
The building was insured as a dwelling house, and the policy contains the following clause : “ and it is agreed and declared to be the true intent and meaning of the parties hereto, that in case the above mentioned building shall at any time after' the making and during the time this policy Avould otherwise continue in force, be appropriated, applied or used to or for the purpose of carrying on or exercising therein, any trade, business or vocation, denominated hazardous or extra hazardous, or specified in the memorandum of special rates in the proposals annexed to this policy, or for the purpose of storing therein any of the articles, goods or merchandise, in the same proposals denominated hazardous or extra hazardous, or included in the memorandum of special rates, unless herein otherwise specially provided for, or hereafter agreed by this corporation in Avriting, to be added or indorsed upon this policy, then and from thenceforth, so long as the same shall be so appropriated, applied or used, these presents shall cease .and be of no force or effect.”
Spirituous liquor is classed in the proposals annexed to the policy, as an article denominated hazardous, as is also the business or trade of tavern keeper.
The judge charged the jury, upon the questions raised at the circuit, and afterwards discussed in the argument of the rule for new trial: that the keeping of a boarding house by the tenant, was not a violation of the policy; that the mere keeping of spirituous liquors in decanters, or demijohns and kegs, for the use oi the family, and to sell to the boarders, Avas not a storing of liquors within the meaning of the policy. Whether the Avoman *482 kept a tavern, contrary to the provisions of the policy, or not, was submitted as a question for the consideration of the jury. Upon this part of the case, the judge charged the jury as follows: “ A person may keep tavern without a license. There is no penalty for keeping a tavern or inn without a license, but there is a penalty for a tavern keeper, or inn keeper, or any other person, selling liquor without a license. If, therefore, a man or woman sets up or opens a house of entertainment for travellers or others, and furnishes them with meat, drink and lodging, for pay and emolument, it is an inn or tavern to all intents and purposes; and if, under the'evidence of this cause, you think that the tenant kept a tavern in the sense I have mentioned, then you ought to find for the defendants. It has not been insisted that a license is necessary to constitute a tavern within the meaning of the policy, nor do I think it can reasonably be contended for.”
■ The plaintiff having obtained a verdict, the defendants seek to set it aside, as being against law and evidence.
First. It is said the policy ought to be avoided, because the house was insured as a dwelling house, and the plaintiff permitted it to be occupied as a boarding house; and that the judge erred in his charge to the jury in this respect. To determine this, we must ascertain whether the change from a dwelling house, or a private dwelling house, as was insisted on in the argument,, to a boarding house, was a violation of any prohibition contained in the contract between the parties.
The keeping of boarding houses is not prohibited by the policy in express terms. There is no reference to them in the trades or business denominated hazardous or extra hazardous. And if the company .have not seen fit to classify them as exposed to greater risk than ordinary dwelling houses, they cannot, with any show of propriety, ask to avoid the policy on this ground.
The true rule, I apprehend, was laid down by Oakley, Judge, in Langdon v. The New York Equitable Insurance Company, 1 Hall, 226: “ Where the insurance is general, on the building, or where a store, in general terms, is insured ; the true construction of the policy undoubtedly is, that all kinds of business may be carried on, and all kinds of goods and merchandise kept in the building, except such as are expressly prohibited.” This case was removed by writ of error, to the supreme court of the state *483 of New York, the judgment affirmed, and is reported in 6 Wend. 623. The supreme court held, in reference to the same question, that “ the enumeration of certain trades or kinds of business, as prohibited on the ground of being hazardous, is an admission that all other kinds are lawful under the contract.”
In Doe ex dem. Pitt v. Lanning, 4 Campbell, 76, the court ruled that a coffee house was not an inn, within the meaning of a policy of insurance against fire, enumerating the trade of an inn keeper, with others, as extra hazardous, and not covered by the policy.
As the plaintiff, in this case, was not prohibited by his contract with the defendants, from keeping a boarding house, I am of opinion that the charge of the judge, in this respect, was correct.
Second. It is said the policy should be avoided, because the premises were used for storing spirituous liquors, and that herein was also error on the part of the judge in his charge to the jury.
Was the keeping of the liquors in the house, as proved on the trial, a storing therein prohibited by the policy ? I think not. The liquors kept by this tenant were for the consumption of her family, or to be sold to the boarders or others. No part of the house was used as a warehouse, wherein spirituous liquors, or any other articles, were deposited for safe keeping and redelivery in specie. It does not appear that any larger quantities were kept, than she may have considered her business required; and, from the evidence, it is not probable that the whole stock of liquor which she had in decanters, demijohns and kegs, at any one time, was as much as many private gentlemen have in their cellars for their own use. To adjudge the keeping of the spirituous liquors, under the circumstances of this case, to be a storing of them, in violation of the policy, would be a perversion of the term. It is difficult to define precisely, the meaning of the word storing, as used by these parties. I have examined, with some care, the books within my reach, to ascertain the adjudged meaning of the term, and can find but one authority upon the subject. The case before referred to, in 6 Wendell, 623, was upon a policy of insurance containing substantially, and almost literally, the same provision against storing in the building insured, any of the articles denominated hazardous or extra hazardous, as is contained in this policy. The insurance, in that case was upon “ a *484 three story brick building, with slate roof, situate at the corner of two streets.” When the fire happened, the building was occupied as a grocery store, and the tenant had in the cellar, one cask of-oil, one barrel of rum, one cask of Jamaica spirits, one pipe of gin, and some molasses. The tenant retailed his goods from the store, and kept a part of his stock there for that purpose, and replenished his stock from that in the cellar, as occasion required. The court not only decided that a grocery, not being prohibited, might be kept-in the building, but that the keeping of oil and spirituous liquors in the store, under the circumstances disclosed in the case, was not appropriating or using the building for the purpose of storing those articles, within the meaning of the policy. They define the term storing, as used by the parties in this case, “a keeping for sáfe custody, to be delivered out in the same condition, substantially as when received and say, it only applies when the storing or safe keeping is the sole or principal object of the deposit, and not when it is merely incidental, and the keeping is only for the purpose of consumption.
Third. It is alleged that the tenant kept a tavern contrary to the express conditions of the policy, and that, therefore, no recovery can be had.
If we lay out of view the business of retailing liquors, pursued by the tenant at the time of the fire, and before, there was nothing in her occupation that constituted her a tavern-keeper, in point of law, or in the general acceptation of the term. And surely, the simple fact of a person selling spirituous liquors by small measure, will not constitute him a tavern keeper. We were referred, by counsel, to Webster’s dictionary, for the definition of the word “tavern.” He defines it “a house licensed to sell liquor to be drank on the spot. In some of the United States, tavern is synonymous with inn, or hotel, and denotes a house for the entertainment of travellers, as well as for the sale of liquors, licensed for that purpose.” It is not pretended that the tenant was, in this sense of the tei’m, a tavern keeper, not having received license for that purpose, nor did she hold herself out as such, nor did she entertain the travelling community. Aside from the unlawful business of selling liquor by small measure, it was no more than an ordinary boarding house, which she was clearly entitled to keep. The mere fact of selling liquors by - retail, at a regular *485 bar in the house, to the boarders and others, although unlawful, will not vitiate the policy any more than the transaction of any other unlawful business upon the premises, not prohibited by the policy. Whenever it is made to appear that the fire was occasioned by such unlawful use of the premises, the policy is destroyed. Did insurance companies design to prohibit the sale by retail or otherwise, of spirituous liquors, upon premises insured by them, they should make it a part of their contract, so that the insured and the community generally would understand their rights ánd duties, and the obligations of the companies. In the language of the judge, in his charge to the jury in this case, “ It is of great importance to the community that these contracts of insurance against loss by fire should be well understood, and be faithfully carried into execution by the parties. On the one hand, the insurers ought not to be excused from payments on frivolous objections, or merely doubtful grounds; and on the other, the insured ought not to be allowed to recover, if he has violated the conditions of his policy.”
It was contended by the counsel for the defendants, on the argument, that as the building was insured as a dwelling house, and represented by the plaintiff to defendants’ agent, to be a private dwelling house, that there was a warranty on his part that it should not be occupied for the purposes proven at the trial; and that in suffering it to be occupied for those purposes, there was a breach of the warranty, or a misrepresentation in a material matter; and, in either case, the policy was avoided. If I am right in the view I have taken of the case, there has been no breach of warranty, or misrepresentation by the plaintiff, as there could be neither, in the sense contended for by the counsel, without violating some stipulation or condition contained in the contract between the parties; and as there has been, in my opinion, no such violation, it follows that there has been no such breach of warranty, or misrepresentation.
I see no reason to disturb the verdict, and am of opinion that the rule to show cause be discharged.
Hojrnblowjgb, C. J. and Kevius, J. concurred. Elmeb, J. absent.
*486 White, J.
This is an action brought by Rafferty against the Eire Insurance Company, on a policy of insurance made on a house, in which is stated in the pleadings.
The plaintiff, at the trial, after giving in evidence the policy of insurance, and also the proofs of loss of the house by fire, during the continuance of the policy, and the usual proof of notice and affidavit of the estimated extent of loss, and the magistrate’s certificate, as required by the policy, and having proved by witness the amount of loss and the origin of the fire, rested his case.
The company then proved by their agent, that, at the solicitation of plaintiff, he made a survey of the house insured. It was insured as a dwelling house. That in taking that survey, he saw no bar when the policy was made, and did not understand that it was a boarding house; that plaintiff said it was a private dwelling house. He went into the back room and saw no bar there.
And, by another witness, defendants proved, that at the time of the fire, (which was on the fifth of April, 1837,) the house was occupied by a woman by the name of Milehy, a kind of private house, where she sold liquor, and that, at times, persons were there drinking, and a good deal of drunkenness going on late at nights. It was a boarding house for mechanics ; that it had been kept as a boarding house, and there was a counter in the back room, on the first floor, where there was all kinds of liquor, in decanters. And it was in evidence that there was a regular bar, liquor sold to those who wanted, and there was some intoxication there.
By the policy, the company promise to pay the loss within sixty days after due proof of loss, &e.
And it is stipulated, agreed and declared, that if the house insured shall, at any time during the policy, be appropriated to, applied or used for the purpose of carrying on or exercising therein any trade, business or vocation, denominated hazardous or extra hazardous, or specified in the memorandum of special rates in the proposals annexed to the policy, or for the purpose of storing therein any of the articles, goods or merchandise denominated hazardous or extra hazardous, or included in the memorandum of special rates; so long as the house is so used or occupied, the policy to cease and be of no force. And the *487 memorandum attached to the policy, and referred to therein, designated as hazardous articles, among others, spirituous liquors, saltpetre, tar, oil, turpentine ; and amongst the trades or occupations, denominated hazardous, sail makers, ship chandlers, and tavern keepers.
And it is submitted to the court, on this application, whether on the evidence, the plaintiff was entitled to a verdict, or whether the policy had been forfeited by the plaintiff, in consequence of the mode and manner the said house was occupied or used.
I believe all the preliminaries, such as notice of the fire, certificate, &c. are all regular, &c.; and the questions presented are, 1st. Whether an insurance of a building as a dwelling house, is destroyed, if the same is occupied as a boarding house. 2d. Whether the keeping of liquor in decanters or vessels, as is usual in taverns, for daily use, is the storing .of liquors within the meaning and true construction of the policy, which prohibits, in express terms, the storing of liquors. 3d. Whether the house insured was, at the time of the fire, in April, 1837, a tavern.
The whole contract between the parties is to be found in the policy, the whole of which (both form and substance) is made by the insurers ; we must, therefore, look to it for the terms and conditions on which this insurance was made. In that we find it is agreed and declared, (and in the policy it is declared that it is made and accepted, in reference to the proposals and conditions thereto annexed, which are to be used and resorted to, in order to explain the rights and obligations of the parties thereto — in all cases not therein otherwise especially provided for,) to be the true intent and meaning of the parties, that, in case the said dwelling house shall, at any time after the making thereof, during the continuance of the said policy, be appropriated to, applied, or used to, or for the purpose of carrying on or exercising therein any trade, business or vocation, denominated hazardous or extra hazardous, or specified in the memorandum of special rates, in the proposals annexed to the policy, or for the purpose of storing therein any of the articles, goods or merchandize, in the same proposals denominated hazardous or extra hazardous, or included in the memorandum of special rates, unless herein otherwise specially provided for, or hereafter agreed by the said insurers, in writing, to be added or indorsed on the policy, then and *488 thenceforth, as long as the same shall be so appropriated, applied or used, the said policy shall cease and be of no force or effect. And we must look to the proposals referred to for further explanation, and in them we find a classification of goods, and trades or occupations, some denominated not hazardous, some hazardous, and some extra hazardous; and of the goods denominated hazardous, we find booksellers’ stock, china, glass and earthen ware, in packages; flax, hemp, jewellers’ stock, mechanical instrument sellers’ stock, oil, pitch, pictures and prints, spirituous liquors, saltpetre, tar, turpentine, and watchmakers’ stock.; and of the trades denominated hazardous, we find chair makers, chocolate makers, confectioners, milliners, sail makers, ship chandlers, tavern keepers, and tobacco manufacturers. And as in the goods and trades denominated extra hazardous, neither spirituous liquors nor tavern keepers are mentioned, it is unnecessary, for the purpose of this case, to set out the names of the various articles and trades of that class.
We are then to look at the evidence in the case, to see if the house, during the policy, and at the time it was burned, was appropriated, applied or used for the purpose of carrying on therein any trade, business or vocation denominated hazardous, or specified in the special proposals.
Or if it was used for the purpose of storing therein any of the articles denominated in the proposals as extra hazardous, for if so used, for either purpose, it will avoid the policy.
The defendants say the house was kept as a boarding house; but this, I apprehend, will not destroy the policy ; there is no specification which makes a boarding house an extra risk, and when so used it is still a dwelling house and a private house, as distinguished from a public house or tavern ; and as it was not mentioned or specified in the proposals annexed to the policy, it was not, therefore, prohibited from being so used.
It is said that the house was kept as a tavern, but I think the evidence does not make out that fact. A tavern is a different house from a boarding house, or one where provisions are prepared and sold to boarders, or others calling in, for accommodation ; and though they may get liquor in the house, yet it is not a tavern under the meaning of the term, as generally used in the country, or as I apprehend as used in this policy.
*489 It is proven that liquor was kept and sold in the house • but I don’t find in the contract or proposals any prohibition of keeping in the house liquor for sale or use, in casks, demijohns, or decanters. The prohibition is, that liquor shall not, during the policy, be stored in the house. Now I think there can be no misunderstanding as to what was meant by storing liquors; it never could mean the keeping liquors in a house for home consumption.
In the case of the New-York Equitable Insurance Company v. Langdon, 6 Wend. 628. The court say the only question is, whether the keeping of oil and spirituous liquors in the store, under the circumstances disclosed in the case, was a storing of such articles.
This case in New-York, was an action brought on a policy, like unto the one made in the case, in which a store was insured, and in the policy, spirituous liquors and oil were classed among the hazardous articles; and in the store insured, the tenant kept a family grocery store, and had on hand, at the time of the fire, various kinds of spirituous liquors and oil, and other articles usually kept in a grocery store, all which were kept for the purpose of selling out by retail, in small measure, in the store. It was decided that this was not a storing of spirituous liquors, within the meaning of the policy. The word storing was intended by the parties to mean, the keeping such articles for safe custody, to be delivered out again in the same condition, substantially as when received, and applied only when the storing or safe keeping is the sole or the principal object of the occupant, and not where it is merely kept for the purpose of consumption or sale.
In my opinion there was no forfeiture of the policy, and the plaintiff had a right to recover his damages sustained by the fire; and the rule for a new trial ought not to be granted.

jRule discharged.