ynds v. The Schenectady County Mutual Insurance Co.

have thought, and I cannot say they were not warranted in the conclusion. The plaintiffs are therefore entitled to judgment.

New trial denied.

[ALBANY GENERAL TERM, December 6, 1852. *Parker, Wright* and *Harris,* Justices.]

HYNDS and MORGAN *vs.* THE SCHENECTADY COUNTY MUTUAL INSURANCE COMPANY.

Where a policy of insurance contained a clause suspending the operation of the policy in case the premises insured should be appropriated, applied or used to or *for the purpose of storing or of keeping therein any of the articles denominated hazardous,* one of the buildings insured being occupied by a carding machine; *Held* that the mere fact that a small quantity of undressed flax (although a hazardous article) had been permitted to remain in the basement of the carding machine building since the removal of the flax-dressing machinery from such basement, a few days prior to the issuing of the policy, was not conclusive evidence that the building was appropriated, applied or used for storing or keeping flax, within the meaning of those terms as used in the policy. PARKER, J. dissented.

*Held also,* that before the policy could be avoided on the ground of a violation of the provision relative to the storing or keeping of hazardous articles, the fact must be established that the insured intended to store or keep the flax in the building.

*Held further,* that if the flax in the basement room was there but *temporarily,* and with no intention of having it regularly stored or kept there, it would not amount to an appropriation of the building to a purpose inhibited by the policy.

Mere negligence, in the assured, is not sufficient to defeat a recovery upon a policy of insurance. Before that ground of defense can be made available there must be evidence of such a degree of negligence as will evince a corrupt design.

THIS action was brought upon a policy of insurance. On the 10th day of June, 1848, the defendants insured the plaintiffs for $1500 on their flouring mill and machinery, and $500 on their carding machine and machinery, situate in the town of Seward, in the county of Schoharie. The policy contained a clause to

Hynds *v.* The Schenectady County Mutual Insurance Co.

the effect that, in case the premises should, at any time, during the time the policy would otherwise continue in force, be appropriated, applied or used to or for the purpose of carrying on, or exercising any trade, business or vocation denominated hazardous, or extra hazardous, *or for the purpose of storing* or of *keeping therein any of the articles, &c. denominated hazarddous*, then and from thenceforth, so long as the same should be so appropriated, applied or used, the policy should cease and be of no force or effect. One of the conditions annexed to the policy also declared, that "if any person insuring any property in this company shall make any misrepresentations or concealment in the application, or if, after insurance is effected, the risk of the property shall be increased by any means whatever, within the control of the assured, or if the building or premises shall be occupied in any way so as to render the risk more hazardous than at the time of insuring and not specified in the application, such insurance shall be void."

The premises were destroyed by fire on the morning of the 12th of June, two days after the policy was effected. The plaintiffs claimed to recover the whole amount insured. The defendants alleged, in their answer, "that the application did not state correctly for what purpose, or in what manner, or how, the carding machine. building was occupied, as required by the terms of the policy, and the terms and conditions thereto annexed, but concealed the same, contrary to an express condition of the said policy which stated in effect that the same should be used for the carding of wool only; that the plaintiffs, without the knowledge or consent of the defendants, used the said carding machine building, or some part thereof, for a *flax factory*, or for dressing and storing flax, and that, at the time of the fire, on the said 12th of June, and also of the making of the said application, the said carding machine building contained a large quantity of flax and tow, and that flax and tow and refuse of flax had been and then was stored and scattered about and within ten rods of said carding machine building; and was negligently scattered about and against the said carding machine building, in express violation of said policy, and the terms and conditions thereto annexed.

Hynds *v.* The Schenectady County Mutual Insurance Co.

And that a quantity of said flax or tow, and the refuse of flax, was stored or placed in the fireplace in the lower part of said carding machine building, directly below the chimney, which was used in warming said carding machine building, and that the manufacturing or dressing of said flax, and the storing of the same, and of the tow aforesaid in and about the said carding machine building greatly increased the hazard of said carding machine building above that described in the said application. The allegations of the answer were put in issue by a reply, and the cause was brought to trial at the Schoharie circuit, in October, 1850, before Mr. Justice Wright.

Upon the trial, it appeared that the carding machine building was erected on a side hill, so that the door on the west side entered the second story, and the door on the east side entered the basement story. The basement story had been used for flax dressing. A witness testified that, a few days before the insurance was effected, he had removed the flax brake and taken down the flax machine, and put up the machinery in the basement room which had before been there for running the carding machine; that the flax and tow had been swept down from the beams and overhead, and what was on the floor had been swept out and put in a heap at the door; that a small quantity of unbroken flax, two and a half or three feet high, and three feet wide, was left piled up in the corner of the room. It was also proved that the tow and rubbish about the building had been removed the week before the fire. The insurance was effected on Saturday, and the fire occurred on Monday morning following.

The only description of the building in the plaintiffs' application for insurance was that it was 30 feet by 30, containing one stove pipe well secured.

The testimony being closed, the defendants' counsel moved for a nonsuit upon the following grounds. 1. That the plaintiffs' application for insurance did not state truly the dimensions of the carding machine building and its number of stories. 2. That such application did not truly state the internal divisions and arrangement of the carding machine building, and omitted to state that there was a basement story to the building. 3. That

the application did not state truly how, or in what manner, the carding machine building and the several parts thereof were occupied.    4. That the application omitted to state that flax was kept or stored in the basement story.    5. That the application omitted to state that there was a fireplace in the building. 6. That in their preliminary proofs the plaintiffs had untruly stated the general manner in which the building and the several parts thereof were occupied, at the time of the loss, and concealed the fact that flax was kept or stored in the basement room.    The court denied the motion, and the defendants' counsel excepted.

The judge charged the jury that, if at the time the fire occurred, the building was appropriated, applied or used for the storage of flax, that being a hazardous article, the plaintiffs could not recover; but if the building was not devoted to or used for that purpose, and the small pile of undressed flax, said to have been in the lower room, was there but temporarily, and with no intention of having it regularly stored or kept there, then the policy would not be avoided.    To this last paragraph of the charge the defendants' counsel excepted, and requested the judge to charge that if at the time of the fire, there was flax kept in the lower room of the building, the policy would be of no effect.    The judge refused to charge upon this proposition other than as he had already charged, and the defendant's counsel excepted.    The counsel for the defendants also requested the judge to charge that if there was flax in the lower room for safe keeping, and not for the purpose of consumption, or in the usual course of the business for which the building was occupied, the plaintiffs could not recover.    The judge refused to charge upon this proposition other than as he had charged, and the defendant's counsel excepted.    The defendants' counsel also requested the judge to charge that if the fire originated on the flax or tow in the lower room, the plaintiffs could not recover.    The judge refused so to charge, and the plaintiffs' counsel excepted.

The counsel for the defendants also asked the judge to charge that the plaintiffs not having stated in their application that there was a fireplace in their carding machine building, were

Hynds *v.* The Schenectady County Mutual Insurance Co.

guilty of concealment, and that the policy was therefore void. Also, that the plaintiffs not having stated in their application that the height of the carding machine building was two stories, nor the internal arrangement thereof truly, the policy was of no force. The judge refused to charge as requested upon either of these propositions, and the defendants' counsel excepted.

The judge further charged the jury, that though they should believe there was some degree of negligence on the part of the plaintiffs, yet, to prevent a recovery on this ground, the evidence should be of such a character as to evince on the part of the plaintiffs a corrupt design to fire the buildings, or an intention that they should be burned. To this part of the charge the defendants' counsel also excepted. The jury found a verdict for the plaintiffs for $2289,20. Judgment having been perfected, the defendants appealed.

*J. H. Ramsey*, for the plaintiffs.

*P. Potter*, for the defendants.

HARRIS, J. Two grounds of defence, only, are contained in the defendants' answer. The one is, that at the time of the application and also at the time of the fire, a quantity of flax and tow were stored or placed in the lower room of the carding machine building. The other, that in making the application and also in giving an account of their loss, the defendants concealed and misrepresented the manner in which the building was occupied. For this reason, if for no other, the judge was right in refusing to charge that the policy was invalid because the plaintiffs had omitted to state in their application that there was a fireplace in the building, or that the building was two stories high, or what were its internal arrangements. In respect to these grounds of defense it is enough to say, they were not within the issues upon trial.

I think, too, the judge has applied the true rule of law to the facts in relation to the flax which at the time of the insurance and at the time of the fire also, was in the lower room of the

building. Flax was a hazardous article. By the terms of the policy, the plaintiffs had no right to store or keep it in the building. But the mere fact that a few bundles of undressed flax had been permitted to remain in the basement of the building, under the circumstances as they appear in the case, cannot be conclusive evidence that the building was appropriated, applied or used for storing or keeping flax, within the meaning of these terms, as used in the policy. The terms " appropriate," " apply," and " use," import volition, purpose, intent. Before the policy could be avoided, on the ground of a violation of this provision, the fact must be established that the plaintiffs intended to store or keep the flax in the building. This question was submitted to the jury. It was left to them to say, upon the evidence, whether the building had been appropriated, applied or used for the storage of the flax. To this general proposition, as it was submitted, there was no objection. To aid the jury in determining the question thus left to their decision, the judge proceeded to state, negatively, what would not amount to such an appropriation, or application or use of the building as would avoid the policy. He says, if the building was not devoted to, (by which terms I understand him to mean the same thing as though he had repeated the words " appropriated" or " applied,") or used for that purpose, that is, for the purpose of storing flax, and if, on the contrary, the small pile of undressed flax, which was there, was only left there temporarily, that is, with no intention or purpose of having it regularly stored or kept there, this would not amount to such an appropriation of the building to the storing or keeping of flax as would avoid the policy. I understand the word " regularly," to have been employed in very much the same sense as the words " habitual" and " ordinary" were used by Lord Tenterden in *Dobson* v. *Southby*, (1 *Mood. & M.* 90.) In that case, the terms of the policy required that no fire should be kept in the building, and that no hazardous goods should be deposited there. For the purpose of tarring the building a barrel of tar had been brought there, and a fire had been lighted, for the purpose of heating the tar. The tar boiled over and took fire, and thus the building was burned. In

an action upon the policy, the defendant contended that the plaintiff could not recover, first, because the lighting of a fire was in contravention of the terms of the policy, and next, because the bringing of the tar barrel there, it belonging to the description of hazardous goods, was also a breach of the conditions of the policy. The court said, " If the company intended to stipulate, not merely that no fire should habitually be kept on the premises, but that none should ever be introduced upon them, they might have expressed themselves to that effect, and the same remark applies to the case of hazardous goods also. In the absence of any such stipulation, I think the condition must be understood as forbidding only the *habitual* use of fire, or the *ordinary* deposit of hazardous goods." So, in this case, if it had been the intention of the insurers that the policy should be forfeited if any hazardous article should at any time be introduced or found upon the premises, it would have been easy for them to express such intention, in their contract. Then, the plaintiffs would have been apprised of the strictness of the terms upon which they held their insurance. Then, if a box of glass, or a ream of paper, or a bottle of spirituous liquor should happen to be introduced into the building, however temporary the purpose for which it was introduced, it might work the forfeiture of the policy. The terms of this policy require no such strictness of interpretation. It is provided that the building shall not, even partially, be appropriated, applied or used for, or in the equally significant language of the charge, devoted to, the purpose of *storing* or *keeping hazardous goods.* The jury were told, in language satisfactory to the defendants' counsel, that the use of the building for such a purpose would avoid the policy. But, lest they might misapprehend this instruction, they were also told, that if the small pile of undressed flax said to have been in the lower room was there but *temporarily,* and with no intention of having it regularly stored or kept there, it would not amount to an appropriation of the building to a purpose inhibited by the policy.

*Shaw* v. *Robberds,* (6 *Ad. & Ellis,* 75,) is a case in point to sustain the rule of construction adopted in this case. The build-

ings insured consisted, among others, of a kiln for *drying corn.* One of the conditions of the policy was, that if any alteration should be made in the business carried on in the buildings, notice should be given to the insurers, &c. It appeared in evidence that, after the insurance had been effected, a vessel laden with bark had been sunk near the premises, and the owner of the kiln had allowed the owner of the bark to dry it in his kiln. While it was being dried, the kiln took fire and was burned down. It was insisted, for the defense, that such a change of business had been shown as required a notice according to the terms of the policy. But Lord Denman, chief justice, said, "the condition points at something permanent and habitual. If the plaintiff had dropped his business of corn drying and taken up that of bark drying, or had added the latter to the former, no doubt the case would have been within that condition. Perhaps, if he had made any charge for drying this bark, it might have been *a question for the jury* whether he had done so as a matter of business, and whether or not he had thereby made an alteration in his business, within the meaning of that condition. But, according to the evidence, we are clearly of opinion that no such question arose for the consideration of the jury; and that this single act of kindness was no breach of the condition." (*See also O'Neil* v. *The Buffalo Ins. Co.*, 3 *Comst.* 122 ; 2 *Greenl. Ev.* § 408.)

In *Langdon* v. *The N. York Fire Ins. Co.*, (6 *Wend.* 623,) there was a condition that the building should not be appropriated, applied or used for the purpose of *storing* any hazardous goods. When the building was burnt it contained a cask of oil and several casks of spirituous liquors which were kept as a part of the stock in trade of the party insured. It was held that this was not a violation of the condition of the policy, on the ground that the goods, though hazardous, were not deposited for safe keeping, but *kept* for the purpose of sale and consumption. Perhaps the addition of the word "keeping," in the policy in question, might cover such a case as that presented in *Langdon* v. *The New-York Fire Ins. Co.;* but if any such effect is to be given to this word, it can only be in cases where the build-

ing has been either wholly or partially *appropriated* to the *keeping* of the prohibited articles, as distinguished from a mere temporary or occasional deposit without any intention of a permanent or habitual use of the building for such an object.

I think too the judge who tried this cause has correctly stated the law on the question of negligence. The counsel for the plaintiff is entirely mistaken in supposing that the general principle which will not allow a party, himself guilty of negligence, to recover for the loss or injury to which he has thus contributed, is applicable to an action upon a policy of insurance. The general doctrine on that subject is, that mere negligence, whether of the insured or his agents or servants, constitutes no defense for the insurers. (*Ellis on Insurance*, 72.) In *Waters* v. *The Merchants' Louisville Insurance Company*, (11 *Peters,* 213,) it was said by Story, J. that the doctrine had, for a great length of time, prevailed, that losses occasioned by the mere fault or negligence of the assured or his servants, unaffected by fraud or design, are within the protection of policies. (*See also The Columbia Ins. Co. of Alexandria* v. *Lawrence*, 10 *Pet.* 507.) The charge in this case contains nothing more. The jury were told that mere negligence was not sufficient to defeat a recovery; that before this ground of defense could be made available, there must be evidence of such a degree of negligence as would evince a corrupt design. This I understand to be the well settled rule of law on this subject. If it were not so, policies of insurance against loss by fire would be of comparatively little value, for the cases are few in which losses by fire cannot be traced to some sort of carelessness or negligence on the part of the assured, or his family or servants. It is one of the objects of insurance to protect the party insured, against negligence. In *Shaw* v. *Robberds*, above cited, Lord Denman said that " in the absence of fraud, the proximate cause of the loss only is to be looked to, and that the simple fact of negligence had never been held to constitute a defense."

Upon the whole, I think the case has been well tried, and that the judgment should be affirmed.

WRIGHT, J. concurred.

PARKER, J.   It was not set up in the answer that the application for insurance did not truly state the dimensions of the carding machine building, its number of stories, and its internal divisions and arrangement, or that it omitted to state that there was a basement story to the building or a fireplace within it. The 1st, 2d and 5th points on the motion for a nonsuit, and the 1st and 2d exceptions to the refusals to.charge, were not therefore well taken.   The 6th exception to the refusal to charge is unavailable, for the same reason.   No claim to have the premium note deducted or set off was set up in the answer

But it was proved that a quantity of flax and tow was in the basement room of the carding machine, at the time of the insurance, and also at the time of the fire ; and there was evidence tending to show that the fire was occasioned by sparks falling down the chimney into the fireplace of the basement, in and around which, tow was scattered, and near which was the pile of flax.   According to the conditions of the policy, *flax* belonged to the class of hazardous articles.   Nothing was said in the application for insurance about the flax in the basement, though the inquiry was made " for what purpose occupied ?"   It was agreed in the policy, that in case the premises should be used for the purpose of storing or keeping therein any articles denominated hazardous, so long as the same should be so used, the policy should be of no force or effect.   The counsel for the defendants requested the court to charge the jury, that if they believed there was flax kept in the lower room of the carding machine building at the time of the fire, the policy would be of no effect.   That if the jury believed that there was flax in the lower story of the carding machine building for safe keeping, and not for the purpose of consumption, or in the usual course of business for which the buildings were occupied, the plaintiffs were not entitled to recover.   That if the jury believed that the fire originated in the flax or tow, in the lower room of the carding machine buildings, the plaintiffs were not entitled to recover. The judge refused to charge each of these several propositions

Hynds *v.* The Schenectady County Mutual Insurance Co.

except as stated in his charge, to which refusals the defendants' counsel severally excepted.  The judge charged the jury, among other things, that if the evidence satisfied them that at the time the fire occurred, the building was appropriated, applied or used for the storage of flax, the policy was of no force and the plaintiffs could not recover.  But if the building was not devoted to, or used for that purpose, and the small pile of undressed flax, said to have been in the lower room of the carding machine building, was there but temporarily, and with no intention of having it regularly stored or kept there, then the policy would not be avoided; to the last branch of which charge the defendants' counsel excepted.

Under the prohibitory clause of the policy, it is well settled that hazardous articles may be introduced into the premises for the purpose of making necessary repairs to the buildings.  It was so held in *Dobson* v. *Southby,* (1 *Mood. & Malk.* 90,) where a tar barrel had been taken into a barn for the purpose of repairing the building by tarring it, and a fire was lighted to boil the tar; and in *O'Niel* v. *The Buffalo Fire Ins. Co.,* (3 *Comst. R.* 122,) it appeared that the plaintiff had brought into the house, paints, oils and turpentine, for the purpose of painting the inside, and kept them there while the work was going on.  It was adjudged that the act complained of was not a *storing,* within the language of that policy, and that the articles, being introduced for a temporary purpose, not prohibited by the policy, the risk attending ordinary repairs being intended to be covered by the insurance, the plaintiff was permitted to recover.

In *Langdon* v. *The New-York Eq. Ins. Co.,* (1 *Hall,* 226, and 6 *Wend.* 623,) where a policy contained a clause prohibiting the use of a building for storing therein goods denominated in the memorandum annexed to the policy as hazardous, the keeping of such goods as oil or spirituous liquors, by a grocer, in ordinary quantities, for his ordinary retail, was decided not to be, under the circumstances, a *storing* of them, within the policy.

The word *storing,* in these cases, was held to mean a keeping for safe custody to be delivered in the same condition as when

received; where the safe keeping is the principal object of deposit, and not a keeping for the purpose of consumption or sale in the usual course of business. This is the definition established in *O'Niel* v. *The Buffalo Fire Ins. Co.*, (3 *Comst.* 127.)

In the present case an additional word has been introduced into the policy, which forbids the *keeping* as well as the *storing* of hazardous goods. If the same language had been used in the policy on which the suit was brought, in *Langdon* v. *The New-York Eq. Ins. Co.*, the plaintiff could not have recovered.

But the peculiar feature that distinguishes the present case from all those relied on by the plaintiffs' counsel is, that the hazardous articles were not introduced, either for the purpose of repairs or in the usual course of business for which the building was occupied. The keeping of the articles there was not permitted, but it was expressly prohibited by the policy. To avoid the policy it is not necessary to show that the building was "devoted to" or "used for" the purpose of storing flax, as was said by the judge in his charge. If it is used for the purpose of keeping flax, it is a forfeiture of the policy. Nor is it necessary to show, on the part of the defense, that the whole building was "devoted to" such a purpose. If flax was permitted to be kept there, then the building was used for that purpose. The proof shows that flax had been dressed in the basement room of the carding machine within ten days previous to the fire; and although the flax machine had been laid aside, and some of the flax removed, a pile of unbroken flax, two and a half or three feet high and three feet wide, was left in the corner of the room, and tow was scattered about the room. I think it was erroneous to charge "that if the flax was there but temporarily, and with no intention of having it regularly stored or kept there, then the policy would not be avoided." Hazardous articles can only be introduced temporarily, when it is for a purpose not prohibited by the policy, as for repairs, &c. Such is the rule laid down in *O'Niel* v. *The Buffalo Fire Ins. Co.*, (3 *Comst.* 122.) It goes no further. It does not permit the introduction of hazardous articles even temporarily, if it be for a purpose prohibited by the policy. Such a construction seems

---

to me a plain violation of the contract, and of the intention of the parties. If hazardous articles may be introduced temporarily, when forbidden by the policy, how long may they be permitted to remain? Has the law fixed the limit within which a contract may be so violated with impunity? A brief time of exposure to such hazard, might be long enough to fire the buildings, as is alleged in this case.

Nor can the intention not to have the flax regularly stored or kept there, justify the act complained of. It is not a question of intent, or of regularity of storing or keeping. If the hazardous articles were permitted to be kept in the building, it was a breach of the policy. The parties contracted that flax should not be kept on the premises at all, with the exceptions which have been heretofore recognized in the legal construction of policies, viz. for the purpose of repairs or in the usual course of business for which the building was occupied. The proof shows it was kept there, and the evidence tends strongly to prove that the building was burned in consequence.

I think the learned judge erred in his refusal to charge, as well as in the last paragraph of his charge above quoted, and that the judgment rendered at the circuit should be reversed and a new trial awarded.

Judgment affirmed.

