CHARLES F. GOVE *v.* THE FARMERS' MUTUAL FIRE INSURANCE
COMPANY.

The doctrine is settled that a loss by fire on land, occasioned by the mere fault and neg-
ligence of the insured, his servants or agents, and without fraud or design, is a loss
protected by the policy

Generally *negligence* is not *design*.

Before insurance companies can avail themselves of this ground of defence, they must
show such a degree of negligence as will evince either a corrupt design or a fraudu-
lent purpose on the part of the insured.

Where a husband of a wife admitted to be insane, is the owner of buildings insured by
the defendants, and where the care and custody of the wife for the time being is en-
trusted to her husband, and she burns the buildings while thus insane, the defendants
will be liable for the loss, unless they can show actual design or such a degree of neg-
ligence and carelessness on the part of the husband, as will evince a corrupt design
or a fraudulent purpose on his part.

ASSUMPSIT on a policy of insurance issued by said company to the
plaintiff on the 12th day of January, 1864.

For the purposes of this decision, and no other, the following facts are agreed upon : The property insured was destroyed by fire on the 19th day of March, 1867. The plaintiff was the owner of two undivided third parts of the same. The buildings were intentionally set on fire by the wife of the plaintiff who was insane at the time, and is now in the Asylum at Concord. She had not been in the Asylum before the fire, and had frequently been left alone two or three hours at a time before this day. She was left alone on the day of the fire, and at the time it happened.

If, upon the foregoing facts, the court should be of opinion that the evidence would be competent to show a defence, the case is to be discharged, and the action stand for trial by the jury. But, if incompetent, then judgment is to be entered for the plaintiff for the sum of fourteen hundred dollars, and interest thereon, from June 19, 1867.

MORRISON & STANLEY, Attorneys for Plaintiff.
EASTMAN & CROSS, Attorneys for Defendants.

It was ordered that the questions of law arising on the foregoing case be reserved.

*Morrison & Stanley,* for plaintiff.

The policy in this case is in the usual form, insuring the plaintiff against loss or damage by fire, "provided the same was not caused by design in the insured," &c. There is nothing in the case to raise any presumption that there was any design on the part of the plaintiff, nor is there anything disclosed to show any such negligence as would relieve the defendants from their liability. Negligence is one of the circumstances taken into the account by the insurer at the time the insurance is effected, and in order to be any defence, it must have been such as amounts to probable guilt. There is no pretence that there is any such in this case ; indeed, the facts stated in the case strongly show that the plaintiff exercised ordinary care and prudence in the care of his wife. Angell on Ins. pp. 172, 173, sec. 125.

*Eastman & Cross,* for defendants.

I.   The buildings were *intentionally* set on fire by the plaintiff's wife, and unless her insanity is, in law, a sufficient answer for the act, the action upon general principles and the terms of the policy cannot be maintained.

Insanity is a good defence to an indictment for a crime, but not for damages caused by the acts of the insane person. For instance, if the plaintiff's wife had set fire to and burned his neighbor's buildings instead of his own, he would have been answerable to an action for the loss of the property.

II.   It was gross carelessness for the plaintiff to leave the insane per-

son alone on the premises. And gross carelessness is a good defence to the action. *Chandler* v. *The Worcester Ins. Co.*, 3 Cush. 328; *Huckins* v. *Insurance Co.*, 31 N. H. 238; *Billings* v. *Insurance Co.*, 20 Conn. 130; *Fletcher* v. *Insurance Co.*, 18 Pick. 421, *per Putnam, J.; Ripon* v. *Cape*, 1 Camp. 434: Angell on Ins. secs. 127, 130. And the evidence is competent to be submitted to a jury to show a defence.

NESMITH, J. The doctrine now appears to be well settled by the authorities, that a loss by fire on land, occasioned by the mere fault and negligence of the insured party, his servants or agents, without fraud or design, is a loss protected by the policies, and as such recoverable from the underwriters. *Judge Story* in *Waters* v. *The Merchants' Louisville Ins. Co.*, 11 Peters 213; *Sherwood* v. *General Mutual Ins. Co.*, 14 Howard 351; 3 Kent's Com. 374, and notes; *Ruck* v. *Royal Exchange Co.*; Angell on Ins. secs. 124–5, and 122; 2 Barn. & Ald. 73; *Dixon* v. *Sadler*, 5 M. & W. 405; 8 M. & W. 894; *Shaw* v. *Robarts*, 6 A. & E. 75.

Generally, *negligence* is not *design*. *Catlin* v. *The Springfield Fire Ins. Co.*, 1 Sumner 434. The court in the State of New York, say that before this ground of defence can be made available, there must be evidence of such a degree of negligence as will evince a corrupt design. *Hyndes* v. *Schenectady County Mut. Ins. Co.*, 16 Barb. 119.

There are cases of gross neglect which are, in law, deemed equivalent to a fraudulent purpose or design, founded on the consideration of doing nothing, when the slightest care on the part of the insured would prevent a great injury. Judge Shaw supposes the case where the insured, in his own house, sees the burning coals in the fire-place roll down on his wooden floor, and does not brush them up. This would be nonfeasance, and evidence of a culpable recklessness and indifference to the rights of others. He also supposes the insured premises to take fire, and the flames beginning to kindle in a small spot, which a cup of water might put out, and the insured has the water at hand, but neglects to put it out. This, also, would be culpable negligence, manifesting a willingness differing little in character from a fraudulent and criminal purpose to commit injury to others. *Chandler* v. *Worcester Mut. Fire Ins. Co.*, 3 Cush. 328; 31 Maine 219; *Huckins* v. *Insurance Co.*, 31 N. H. 238; Angell on Ins. sec. 130.

It would be fair to infer a fraudulent intent in the insured, as would be indicated in a forbearance to use all reasonable exertions to save his property from the ravages of fire, when ample preventative means and ability are at hand. Evidence of this kind of negligence will tend to discharge underwriters and insurers from their liability in case of loss.

There are some cases where it has been held that the insured is entitled to indemnity, though the loss occur from the gross carelessness of his servant. The proximate cause being only looked to, and fraud being absent. *Gates* v. *Madison County Mut. Fire Ins. Co.*, 1 Selden

469; approved and followed in *Matthews* v. *Howard Ins. Co.*, 1 Kernan 9; 1 Duer Rep. 371.

From the aforesaid cases we may derive a knowledge of some of the leading principles applicable to questions of indemnity by fire insurance companies, where negligence is imputed to the insured, his agents or servants. Our remaining duty is to inquire how far any of the aforesaid rules will govern the case before us. The defence suggested by the defendants, is, that the plaintiff, the husband of his insane wife, and part owner of the property, alleged to be insured by the defendants, left his wife alone on the day of the fire for some time, it does not appear how long, and that she *intentionally* set her husband's buildings on fire. The case finds the wife was insane at the time of committing the act. It appears to us, it would be a misnomer of terms that she, being admitted to be in this state, could so far control her reasoning powers as to be able to plan or design the act done by her beforehand, in such a manner as to render herself responsible as a moral agent. The word *insane* implies unsoundness or derangement of mind or intellect, not a mere temporary or slight delirium which might be occasioned by fever or accident; and we cannot attach moral accountability to a wrongful act admitted to be done by an *insane* person. Then, the question recurs, if the wife be admitted to be insane when the fire was set by her, was the husband guilty of negligence in leaving her alone? On this point, the case finds that she had frequently been left alone two or three hours at a time before this day. It does not appear that she had set fires or destroyed her own or other's property on these occasions when left alone; or that her husband or friends had any previous warning of any proclivity on her part to commit excesses of any kind by inflicting injury either upon person or property. The fact that when before left alone on other occasions, the wife had not committed any wrong or violence, furnished an argument in her favor as well as her husband. The husband cannot be held to anything more than the exercise of ordinary care and prudence in his conduct towards his wife and others interested in her welfare. It is doubtless a safe general rule, as tested by experience, to commit the subjects of derangement to an asylum, or to skillful medical treatment, at an early stage of their disease; but because this course is not adopted in every instance, we think the inference of gross negligence is not to be imputed to the friends of such patients as prefer to travel another path. The friends of the insane must be allowed some indulgence and discretion, if they prefer to watch over the incipient stages of the diseased subject at home, and to use their efforts to arrest the progress of the malady there. They may not have the pecuniary ability to support the unfortunate friend at an asylum, or away from home. Such considerations must weigh materially in cases of this kind, and will serve to rebut the presumption of the existence of that degree of negligence which is deemed equivalent to a fraudulent purpose or design in him who is the responsible keeper of insane persons. We cannot see in this case evidence of the existence either of design or of that degree of negligence or carelessness which will constitute a legal defence for the defendants.

Therefore, under the agreement of the parties, we think a judgment should be rendered for the plaintiff for the sum of $1400, and interest from June 19, 1867.