MERTON BAKER vs. COMMERCIAL UNION INSURANCE
COMPANY & another.[1]

Worcester. October 6, 1980. — January 23, 1981.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, LIACOS, & ABRAMS, JJ.

*Insanity. Unsound Mind. Insurance,* Fire, Joint insured, Burning of in-
    sured property. *Burning of Property. Evidence,* Expert Opinion, In-
    sanity.

An insured was not precluded from recovery on a policy of fire insurance
    by the fact that his wife, named as a joint insured on the policy, inten-
    tionally set the fire that destroyed their home and neglected to use rea-
    sonable means to save and preserve the property where there was suffi-
    cient evidence to warrant a finding that the wife, as a result of her
    mental condition, was not responsible for her conduct at the time she
    set the fire and for a period of time thereafter. [347-353]

CIVIL ACTION commenced in the Superior Court on
June 16, 1976.

The case was tried before *McCooey,* J., a District Court
judge sitting under statutory authority.

After review was sought in the Appeals Court, the Su-
preme Judicial Court, on its own initiative, ordered direct
appellate review.

*David A. Wojcik* for the plaintiff.

*Richard R. Eurich* for the Commercial Union Insurance
Company.

*Richard M. Passalacqua* for Susan Baker Garland.

ABRAMS, J. The plaintiff Merton Baker seeks compensa-
tion for the loss of his home, which was destroyed by a fire
set by his then wife, Susan (Baker) Garland. The defendant

---

[1] Susan (Baker) Garland was ordered joined as a party defendant by the
judge after the defendant moved to dismiss the action for failure to join
her.

Commercial Union Insurance Company (Commercial), the insurer of the Baker home, has refused to pay Baker on the grounds that Baker's wife intentionally set the fire and then neglected to use reasonable means to save and preserve the property. Commercial asserts that since Baker and his wife were named as joint insureds, the wife's conduct precludes recovery by Baker. *Kosior* v. *Continental Ins. Co.*, 299 Mass. 601 (1938). The plaintiff claims that he is entitled to recover because his wife was not responsible for her conduct on the day of the fire, and the policy does not exempt the company from liability in these circumstances.

The case was tried before a jury. In answer to a special question, the jury found Commercial liable to the plaintiff.[2] Thereafter Commercial's motion for a judgment notwithstanding the verdict was allowed, and judgment was entered for Commercial. All parties filed notices of appeal, Baker and Garland from the judgment entered by the court, and Commercial from the denial of its motion for a directed verdict and from certain evidentiary rulings on expert testimony. We transferred the case here on our own motion. We conclude that judgment should be entered for the plaintiff.[3] See Mass. R. Civ. P. 49 (a), 365 Mass. 812 (1974).

We summarize the facts. In 1971, the Bakers purchased land in Hardwick as tenants by the entirety and built a house on it. In 1974, the Bakers entered into an insurance contract with Commercial under which the property was insured against loss by fire. "Merton B. & Susan G. Baker" were the named insureds under the policy, which was in the standard Massachusetts form. See G. L. c. 175, § 99.

The Bakers were having marital difficulties. Early in May, 1975, Baker informed his wife that he was getting ready to file for divorce and that he would get the property.

---

[2] A stipulation of the parties at the time of the trial set the amount of damages at $30,000.

[3] Since there is ample evidence of Garland's lack of responsibility, the judgment should be in the amount stipulated. At oral argument we were informed that Garland and Baker had agreed on a division of the proceeds in the event Baker should prevail.

On May 19, 1975, the insured house was destroyed by a fire which Garland had set. Garland stayed at the scene, watched the house burn, and told witnesses she had set the fire to deprive her husband of the house. The Bakers separated immediately following the fire and were divorced later that year. There is no evidence that Baker had any knowledge of or was involved in any way in setting the fire.

Garland had a history of psychiatric treatment. She was admitted to McLean Hospital in June, 1975, where she remained until September, 1975. A psychiatrist who treated her during that time testified that, as a result of mental illnesses,[4] Garland did not have the ability at the time she set the fire to conform her conduct to the requirements of the law. He testified that he could express no opinion as to whether she knew what she was doing, whether she could appreciate the wrongfulness of her conduct, or how long the period of her inability to control her conduct lasted.

The judge submitted a single special question to the jury: "Is there any liability on the part of the defendant Commercial Union Insurance Company to Merton Baker by reason of the fire on the Bakers' premises on May 19, 1975?" In his charge to the jury, the judge instructed the jurors that they could find for the plaintiff and answer the question in the affirmative only if they believed Garland was insane at the time of the fire. He defined insanity as the lack of substantial capacity, as a result of mental disease or defect, to appreciate the criminality or wrongfulness of one's conduct or to conform one's conduct to the requirements of the law.[5]

---

[4] From the record it appears that the expert equated mental illness with mental disease. At the voir dire the doctor said that Garland was suffering from a mental disease or defect. Before the jury, in response to a question using the terms mental disease or defect, the doctor said Garland was suffering from mental illnesses.

[5] The case was argued to us and tried below using the American Law Institute test for criminal responsibility. See *Commonwealth* v. *McHoul,* 352 Mass. 544, 546-547 (1967). We therefore accept the *McHoul* standard as the law of the case. "The theory of law on which by assent a case is tried cannot be disregarded when the case comes before an appellate court

See *Commonwealth* v. *McHoul,* 352 Mass. 544, 546-547 (1967).

In its motions for a directed verdict and for a judgment notwithstanding the verdict, Commercial argued that it should not be required to pay on the policy because Garland, one of the named insureds, set the fire and subsequently failed to use any reasonable means to preserve the property.[6] Commercial also argues that there was insufficient evidence to find that Garland was insane at the time of the fire. We disagree.

It is a well-established rule that "[i]f the insured was insane at the time that he wilfully or intentionally caused the fire, the insurer remains liable on the policy" unless there is an express provision to the contrary in the policy, 18 Ander-

---

for review of the acts of the trial judge." *Kagan* v. *Levenson,* 334 Mass. 100, 106 (1956), quoting from *Santa Maria* v. *Trotto,* 297 Mass. 442, 447 (1937). Accord, *Boothman* v. *Lux,* 349 Mass. 426, 428 (1965). We intimate no view as to whether the definition of mental illness for civil commitment, i.e., likelihood of harm to oneself or others, G. L. c. 123, §§ 1, 8, is the appropriate standard in these circumstances or whether some other standard is more appropriate. See, e.g., *Arkwright-Boston Mfrs. Mut. Ins. Co.* v. *Dunkel,* 363 So. 2d 190, 193 (Fla. Dist. Ct. App. 1978) (incapable of expecting or intending consequences); *Hier* v. *Farmers Mut. Fire Ins. Co.,* 104 Mont. 471, 488 (1937) (incapable of doing wilful or voluntary wrong); *Gove* v. *Farmers' Mut. Fire Ins. Co.,* 48 N.H. 41, 43-44 (1868) (incapable of entertaining a fraudulent intent); *Ruvolo* v. *American Cas. Co.,* 39 N.J. 490, 498, (1963) (derangement of intellect sufficient to deprive one of capacity to govern conduct in accordance with reason); *Showalter* v. *Mutual Fire Ins. Co.,* 3 Pa. Super. 448, 452 (1897) (incapable of forming design or intention to injure). See also *Krasner* v. *Berk,* 366 Mass. 464, 467 (1974) (standard for capacity to contract); 10 R.A. Anderson, Couch's Cyclopedia of Insurance Law § 41:667 (2d ed. 1962).

[6] Commercial relies on two provisions of the insurance policy: "This entire policy shall be void if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto."

"This company shall not be liable for loss by fire or other perils insured against in this policy caused, directly or indirectly, by . . . (i) neglect of the insured to use all reasonable means to save and preserve the property at and after a loss, or when the property is endangered by fire in the neighboring premises."

son, Couch's Cyclopedia of Insurance Law § 74:662, at 586 (2d ed. 1968), for, in such cases, the insured is deemed to be incapable of forming a fraudulent intent. See *Hier* v. *Farmers Mut. Fire Ins. Co.,* 104 Mont. 471, 484 (1937); *Bean* v. *Mercantile Ins. Co. of America,* 94 N.H. 342, 344-345 (1947); *Ruvolo* v. *American Cas. Co.,* 39 N.J. 490, 496-497 (1963); *Showalter* v. *Mutual Fire Ins. Co.,* 3 Pa. Super. 448, 452 (1897); 5 J.A. Appleman, Insurance Law and Practice § 3113 at 396 & n.78 (rev. ed. 1970). Since Commercial did not expressly exclude mental illness from this policy, the plaintiff is entitled to recover the full value of the policy if Garland was not responsible for her conduct on the day of the fire.

We conclude that the plaintiff presented sufficient evidence of Garland's lack of responsibility on the day of the fire to permit recovery. A psychiatrist,[7] whose qualifications have not been challenged, testified that in his opinion Garland was not responsible under the *McHoul* standard. The psychiatrist's opinion of Garland's mental condition was based on his own observations and on hospital records. See G. L. c. 233, § 79. The psychiatrist's training and experience was more than ample to support his opinion as to Garland's mental capacity on the day of the fire. See *Commonwealth* v. *Boyd,* 367 Mass. 169, 181-183 (1975); *Commonwealth* v. *Russ,* 232 Mass. 58, 72-73 (1919). The question whether the basis of the doctor's opinion is sound goes to the weight of the evidence, not its admissibility. See *Commonwealth* v. *Campbell,* 378 Mass. 680, 704 (1979). The validity of the psychiatrist's opinion was aggressively explored during cross-examination. See *Commonwealth* v. *Boyd, supra* at 181. It was for the jury to determine whether to believe the psychiatrist and accept his opinion.

---

[7] Commercial claims that the judge erred in admitting the testimony of the psychiatrist on the issue of Garland's responsibility on the grounds that the doctor's opinion was unsubstantiated by the underlying facts and that it would unduly influence the jury. The issue of Garland's lack of responsibility was one on which expert testimony was properly allowed and probably required.

In arguing that the plaintiff is precluded from recovery, Commercial also points to the fact that the psychiatrist was unable to state whether Garland could conform her conduct to the requirements of law after she set the fire. Commercial asserts that Garland watched the house being consumed by fire and neglected to save and preserve the property. Since the psychiatrist had no opinion as to Garland's mental condition under *McHoul* at the moment she watched the house burning,[8] Commercial contends it is entitled to the presumption that most people are sane. See *Commonwealth* v. *Clark,* 292 Mass. 409, 415 (1935). While a jury could reach that conclusion, it was not required to do so. Once the plaintiff established that Garland was not responsible for her conduct at the time she set the fire, the jury could reasonably infer that her lack of responsibility continued for a period of time. See *Peters* v. *Peters,* 376 Ill. 237, 243 (1941); *State* v. *Thomas,* 205 N.W. 2d 717, 721 (Iowa 1973); *State* v. *Allan,* 166 N.W. 2d 752, 758 (Iowa 1969). See also *Hurt* v. *United States,* 327 F.2d 978, 981 (8th Cir. 1964); *United States* v. *Tesfa,* 404 F. Supp. 1259, 1267 (E.D. Pa. 1975), aff'd sub nom. *United States* v. *Green,* 544 F.2d 138 (3d Cir. 1976), cert. denied sub nom. *United States* v. *Tefsa,* 430 U.S. 910 (1977); *Bumgarner* v. *Lockhart,* 361 F. Supp. 829, 834 (E.D. Ark. 1973); Annot., 27 A.L.R. 2d 121 (1953). In this case that inference is buttressed by the fact that shortly after the fire Garland's mental illness was so serious as to require hospitalization. The issue of Garland's mental condition, therefore, was rightly submitted to the jury.

In sum, there was evidence from which the jury could have found that Garland was not responsible for her conduct at the time she set the fire and for a period of time thereafter. Since there was such evidence, a directed verdict in favor of the defendant would have been improper, and the entry of the judgment notwithstanding the verdict

---

[8] The psychiatrist did testify, however, that Garland was mentally ill on May 19, 1975.

was error.[9]  For.the foregoing reasons, the judgment not-
withstanding the verdict is reversed, and a judgment in fa-
vor of the plaintiff is to be entered in accordance with the
stipulation of the parties.

*So ordered.*

---

[9] On the view we take of the evidence, we do not reach the issue wheth-
er the rule that an innocent insured is barred from recovery by the inten-
tional burning of the property by another insured is still sound policy.  See
*Kosior* v. *Continental Ins. Co.*, 299 Mass. 601 (1938).